IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

EDWARD D. SCHULER
ADC #140938, *et al.*                                              PLAINTIFFS

v.                        No. 2:20-cv-97-DPM

ASA HUTCHINSON, Governor,
State of Arkansas, *et al.*                                        DEFENDANTS

ORDER

**1.** In mid-May, Schuler and six other inmates at the East Arkansas Regional Unit of the Arkansas Department of Correction filed this case *pro se* in seeking more precautionary measures against COVID-19 and early release of inmates particularly vulnerable to the virus because of health conditions. Because there were no reported positive cases at EARU at that time, the Court denied the inmates' motion for a TRO, plus directed expedited responding papers from the State defendants. The inmates' motion for a preliminary injunction is now ripe. The State defendants have also moved to dismiss the case.

**2.** There are some threshold issues.

First, several new motions from the inmates. The motion for order, *Doc. 11*, is actually another declaration in support of injunctive relief. The Court directs the Clerk to correct the docket. The Court construes the inmates' motion to reconsider a TRO, *Doc. 25*, as a

supplement to their motion for preliminary injunction. Defendants have responded. *Doc. 30*. The Court directs the Clerk to amend the docket to indicate that these are supplemental filings. The inmates' motion for default judgment, *Doc. 23*, fails. The defendants filed a timely Rule 12(b) motion and response. *Doc. 14–16*. The inmates' motions for appointed counsel and class certification, *Doc. 19 & 20*, are both denied without prejudice as premature. The inmates have ably represented themselves so far. *Plummer v. Grimes*, 87 F.3d 1032, 1033 (8th Cir. 1996).

Second, some party issues. The Governor and Attorney General are not proper defendants. *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956-58 (8th Cir. 2015). All the ADC officials are, because the inmates seek only prospective injunctive relief against them in their official capacities. *Ex Parte Young*, 209 U.S. 123, 158–59 (1908); *Church v. Missouri*, 913 F.3d 736, 747–48 (8th Cir. 2019). The Court directs the Clerk to substitute Anthony Jackson, the current EARU deputy warden, for James Dycus, who has been transferred.

Third, the inmates have plausible standing: they say the way EARU is run puts them at immediate risk of contracting COVID-19; the ADC officials decide how this Unit is run; and this Court can redress any constitutional violation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Fourth, and last, the Court rejects the defendants' argument that injunctive relief is unavailable because the inmates want to change the status quo.  The inmates seek to preserve their health, and the Court's equitable powers are flexible enough to respond if the facts and the law support judicial intervention.  In these circumstances, the balance of the equities must tilt decisively for a preliminary order directing ADC to stop doing X and start doing Y.  *Dakota Industries, Inc. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir. 1991);  *see also Cacchillo v. Insmed, Inc.*, 638 F3d 401, 406 (2d Cir. 2011).

**3.** Schuler and the other inmates, however, have not made a sufficiently solid case for the Court to intervene at this point.  The governing precedent is settled and clear.  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008);  *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  And, as the Court noted in denying the TRO, the law requires the Court to move with particular caution when considering issues affecting prison operations.  *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

The inmates seek a preliminary injunction requiring the ADC to implement many social distancing and sanitation measures.  These include reducing the number of inmates in the unit, requiring masks and isolation gowns for all staff, issuing "medically approved" face masks to all inmates three times or more per week, installing hand

sanitizer stations, and stopping transfers between units and between barracks within the unit. *Doc. 4 at 6–7.*

The inmates have adequately alleged a threat of irreparable harm if they contract COVID-19. They have provided sworn statements about their underlying health conditions. As they say, the extent of the virus in surrounding areas increases that threat. Though the record is thin about how many inmates and staff were being tested, it appears the ADC's measures to keep the virus out of the EARU were successful during the early months. Late last week, though, an inmate at EARU tested positive. The prison responded immediately, locking down that inmate's housing pod, testing everyone in it, and contact tracing to determine who might have been exposed. According to public information from the Governor's daily press briefing, which the Court judicially notices, positive cases in the EARU are increasing dramatically. For example, on June 10th there were sixty new positive cases in the ADC; and most of those were from the EARU. The prison plans to test every inmate at EARU by this Friday, June 12th. There are approximately 1,500 inmates there. The number of positive cases will probably rise. As the test results are received, ADC says it will divide the inmates based on their results. The Unit has also redoubled its efforts on disinfecting and surface cleaning; and it has plans for a field hospital to serve as an infirmary for infected inmates.

*Doc. 22.* This response is robust and reasonable. All told, though, the irreparable-harm factor weighs for the inmates.

The balance between the harm the inmates face and the potential harm of granting an injunction is a wash: The inmates face significant risk; but requiring the prison to change course on its response would have consequences of its own. There's apparently no available space in the ADC, for example, to move a significant number of EARU prisoners to. Aside from the call to release prisoners to reduce population—a high hill that the inmates haven't yet climbed—it's not clear that the proposed measures would yield significantly better results. Indeed, the ADC has implemented some of those measures, or variants of them. For example, it has issued one cloth face mask to every inmate and is working on providing each a second mask. ADC has also installed stations that dispense non-alcohol-based hand sanitizer, beefed up barracks cleaning with disinfectant, and is providing free soap. Staff are supposed to be masked, though the inmates affirm that from time to time some staff are not.

The last two *Dataphase* factors weigh against the inmates. The likelihood of eventual success on the merits is a particularly important consideration. *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). The defendants' no-exhaustion argument casts a long shadow on whether the inmates can succeed on the merits.

*See generally, Ross v. Blake*, 136 S. Ct. 1850, 1856–62 (2016). While the Court is not making a final call on this point, it does not appear that the inmates complied with ADC's grievance policy before filing suit. In their complaint, they pleaded that they had not exhausted administrative remedies. *Doc. 2 at 5–6*. In the various filings, however, some grievances have surfaced. *Doc. 3 at 4–6*. These papers are murky. The sum of all this is a strong no-exhaustion defense. The Court also notes Judge Baker's careful and thorough decision, *Doc. 68*, in *Frazier v. Kelley*, No. 4:20-cv-434-KGB, which illuminates the inmates' perhaps insurmountable challenges on the merits of their deliberate indifference claim. The last factor is the public interest. And on the current record, it doesn't favor the Court's substituting its own judgment for that of the prison administrators.

All material things considered, the balance of circumstances tips against a preliminary injunction. *Winter*, 555 U.S. at 20; *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d at 114. The inmates' motion, *Doc. 3*, is therefore denied.

**4.** The case will go forward. The inmates have stated a plausible Eighth Amendment claim. The exhaustion issue needs a more complete record, which can be presented with an early motion for summary judgment. Last, though the bar for relief by way of release is extraordinarily high, the Court defers ruling on that point of law, too.

\* \* \*

Supplemented motion for preliminary injunction, *Doc. 3 & 25*, denied without prejudice. Motion for default judgment, *Doc. 23*, denied. Motion to dismiss, *Doc. 14*, partly granted and mostly denied. The inmates' claims against the Governor and Attorney General are dismissed with prejudice. Motions for appointed counsel and class certification, *Doc. 19 & 20*, denied without prejudice as premature. The Court appreciated and benefitted from defendants' status report, *Doc. 22*. To keep the Court and the inmates informed about the developing circumstances, the Court directs the defendants to file a similar status report by 17 June 2020 and every fourteen days thereafter until further notice. The Court refers the consolidated case back to Magistrate Judge Ray for further proceedings. The Court would appreciate an expedited recommendation on exhaustion.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

11 June 2020